456 December 6, 2023 No. 648

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of the Adoption of
B. R. K., a Child.

T. R. K.
and T. D. K.,
*Petitioners-Respondents,*

*v.*

N. M. H.,
*Respondent-Appellant.*

Jackson County Circuit Court
20AP01303; A180833

Charles G. Kochlacs, Judge.

Submitted August 23, 2023.

G. Aron Perez-Selsky filed the brief for appellant.

No appearance for respondents.

Before Shorr, Presiding Judge, and Mooney, Judge, and
Pagán, Judge.

PAGÁN, J.

Reversed.

**PAGÁN, J.**

Mother appeals a judgment granting a petition for adoption of child, B, by father and stepmother without mother's consent. The judgment terminated mother's parental rights pursuant to ORS 109.322. On *de novo* review, we conclude that it was error to terminate mother's parental rights because the record does not demonstrate that B's welfare is best promoted through adoption. *J. W. V. v. J. L. W.*, 324 Or App 393, 395, 525 P3d 1237 (2023) (holding that under ORS 19.415(3), we conduct *de novo* review of termination of parental rights). Accordingly, we reverse.

We begin by noting that a petition for adoption ordinarily requires both parents to consent to the adoption. ORS 109.301. However, as we held in *Moran v. Weldon*, 184 Or App 269, 274-76, 57 P3d 898 (2002), the statutory exception, ORS 109.322, substitutes a parent's consent if the petitioner demonstrates that (1) the non-consenting parent is imprisoned under a sentence for a term of not less than three years and has actually served three years; (2) a ground for termination of parental rights exists in addition to the non-consenting parent's imprisonment; and (3) if a ground for the termination of parental rights exists, the welfare of the child is best promoted through the adoption.

Here, the trial court held that the petitioners for adoption prevailed under ORS 109.322 because mother served over three years of a 75-month sentence for charges arising from a car accident that resulted in the death of her other child. The court concluded that mother's offenses constituted extreme conduct under ORS 419B.502(3) and that it was in the best interest of the child to terminate mother's parental rights because B lives with father and stepmother, refers to stepmother as "mom," and has stability within his current family unit.

Having reviewed the entire record, we conclude that the trial court erred in granting the adoption because father and stepmother did not meet their burden of demonstrating that it was in B's best interest to terminate mother's parental rights.[1] *See Simons et ux v. Smith*, 229 Or 277,

---

[1] Father and stepmother did not submit a brief for our review. Our characterizations of their legal arguments are based on legal memoranda submitted to the

284, 366 P2d 875 (1961) ("Adoption, of course, terminates all such rights of the natural parents. Both common sense and fundamental due process would suggest that such inchoate rights should not be cut off without a substantial reason."); *see also Moran,* 184 Or App at 275 ("Termination is the greatest possible deprivation of the fundamental right to be a parent.").

We acknowledge that any act or omission by a parent resulting in a child's death is profoundly serious. However, mother demonstrated an understanding of the gravity of her prior actions, and her conduct thereafter was consistent with that conclusion. There is no evidence of any other criminal activity or child welfare history. Father testified that he did not have concerns about mother's parenting until after the collision, and even after the incident, father cited only general concerns about mother's lack of responsibility.

Furthermore, the evidence was insufficient to show that it was in B's best interest to terminate mother's parental rights. *See Moran,* 184 Or App at 273 ("[T]he court must * * * find that the biological parent could not or would not provide adequate love and care for the child or that the child would suffer undue physical or psychological harm."). Stepmother stated that B calls her "mom" and testified that adoption was in B's best interest because they were "just a regular family." However, the record did not suggest that B would be distressed or harmed by an ongoing relationship with mother. Rather, the record demonstrated that mother still had a strong bond with B, that mother was engaged in the responsibilities of parenting B, and that the bond between B and the purported adoptive parents was not so strong as to pose a risk of harm to B if adoption was not granted.

Thus, for the above reasons, we conclude that it was not in the best interest of B for the trial court to terminate mother's parental rights by granting the adoption.

Reversed.

---

trial court and our reading of the trial transcript.